

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

TERRY D. REESE, SR.,

      Plaintiff,

v.                                Case No.: 2:11cv216

VIRGINIA INTERNATIONAL TERMINALS,
INC., et al.,

      Defendants.

## OPINION AND ORDER

Before the Court is the plaintiff's motion to disqualify Lance A. Jackson, Esq., and the law firm of Montagna Klein Camden, L.L.P. ("Montagna Klein"), as counsel for defendant International Longshoremen's Association, Local 1248 ("ILA Local 1248") in this matter. ECF No. 29. The plaintiff filed his motion, together with a supporting memorandum, affidavit, and exhibits, on February 25, 2012. Id. ILA Local 1248 filed a memorandum in opposition, together with supporting affidavits and exhibits, on March 8, 2012. ECF No. 30. The plaintiff filed a reply memorandum and an additional supporting affidavit and exhibit on March 15, 2012. The motion was referred to the undersigned for disposition pursuant to 28 U.S.C. § 636(b)(1)(A) and the Standing Order on Assignment of Certain Matters to United States Magistrate Judges (Apr. 1, 2002).[1]

---

[1] See Estate of Jones v. Beverly Health & Rehab. Servs., Inc., 68 F. Supp. 2d 1304, 1306 n.1 (N.D. Fla. 1999) (attorney disqualification is a non-dispositive pretrial matter).

The Court held a hearing on the motion on April 25, 2012. Wayne Marcus Scriven, Esq., appeared on behalf of the plaintiff. Lance A. Jackson, Esq., appeared on behalf of defendant ILA Local 1248.  Dean T. Buckius, Esq., appeared on behalf of defendant Virginia International Terminals, Inc. ("VIT").  The official court reporter was Jody Stewart.

Following the April 25 hearing, the Court entered an Order directing the parties to submit supplemental affidavits and documents pertinent to the disposition of this motion.  ECF No. 32. On May 8, 2012, ILA Local 1248 filed its supplemental affidavits and exhibits as directed.  ECF No. 34.  On May 9, 2012, the plaintiff filed his supplemental affidavit as directed.  ECF No. 35.

## I. <u>BACKGROUND</u>

In this action, Reese asserts a so-called "hybrid" Section 301 claim against VIT and ILA Local 1248.  Specifically, he alleges that his former employer, VIT, breached the collective bargaining agreement governing his employment, in violation of Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and that his union, ILA Local 1248, breached its duty of fair representation, implied under the scheme of the National Labor Relations Act, in connection with his grievance against VIT.  <u>See generally</u> <u>DelCostello v. Int'l Bhd. of Teamsters</u>, 462 U.S. 151, 164-65 & n.14 (1983).  As alleged in the amended complaint, these claims arise

from VIT's refusal to reinstate Reese's employment in June 2011, after work restrictions that previously prevented him from performing his job duties were lifted by his physician on May 26, 2011.

The plaintiff now seeks disqualification of Jackson and Montagna Klein on the ground their representation of ILA Local 1248 in this matter without Reese's consent constitutes a conflict of interest under Rules 1.6, 1.7, 1.9(a), 1.10, and 1.18 of the Virginia Rules of Professional Conduct.

Montagna Klein has represented ILA Local 1248 on various matters over a period of decades. The firm does not have a retainer agreement with ILA Local 1248, but rather performs work for the union pursuant to a nonexclusive billing arrangement. In addition to representing the union itself directly in various matters, Montagna Klein appears to have routinely represented union members in workers compensation proceedings as well.

On July 8, 2005, Reese sustained an injury to his back and neck in the course of his employment with VIT. On April 11, 2006, Reese retained Montagna Klein to represent him in workers compensation proceedings with respect to that injury. The retainer agreement expressly limited the scope of representation to a workers compensation claim arising from injuries sustained on July 8, 2005.

On May 22, 2006, Reese sustained another injury in the course

of his employment with VIT, this time to his shoulders and legs. On June 6, 2006, Reese retained Montagna Klein to represent him in workers compensation proceedings with respect to that injury as well.  This second retainer agreement expressly limited the scope of representation to a workers compensation claim arising from injuries sustained on May 22, 2006.  Reese claims to have met with attorney Charles Montagna at the time, and that Montagna handled his case personally until passing it off to his colleague, Charlene Morring, at some point in 2009.  Montagna denies any personal contact with Reese since at least 2004,[2] and Morring has stated in an affidavit that she personally represented Reese on both workers compensation claims beginning in April 2006.

In April 2008, Reese returned to work on a trial basis, subject to significant work restrictions imposed by his physician. These work restrictions prevented Reese from performing his prior work as a straddle carrier operator and hustler driver.  VIT placed Reese in a "sheltered employment" position, where his duties included riding in a pickup truck on rough roads.

On March 19, 2009, Reese's physician issued more stringent work restrictions in response to Reese's report of increased pain when driving over potholes and railroad tracks.  The new work restrictions limited him to clerical duties only, with no riding in

---

[2] It appears that Montagna personally represented Reese between 1999 and 2002 in connection with an earlier, unrelated workers compensation claim.

vehicles on rough terrain. VIT assigned Reese to the "hot house," described as a lounge with a snack machine, a television, and a restroom, where no work was done. Reese remained assigned there until VIT terminated his employment on June 24, 2009.

In August 2009, Reese claims to have met with Montagna for an unscheduled, one-hour consultation, in which Reese requested that Montagna represent him in taking action against VIT and ILA Local 1248 over his termination and the union's representation in related grievance proceedings, but that Montagna declined to represent Reese in this dispute. Montagna denies that the meeting took place, and he denies any personal contact with Reese since before 2004.

On August 28, 2009, Reese filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging discrimination on the basis of disability. Sometime in late 2009, Reese retained Wayne Marcus Scriven, his counsel of record in this case, to represent him. At the April 25, 2012, hearing, Scriven noted that Reese had retained him pursuant to a referral from Morring.

On January 6, 2010, Reese submitted a written grievance to ILA Local 1248, alleging discrimination and harassment on the basis of race, gender, and disability, in violation of the collective bargaining agreement. On January 7, 2010, the union filed Reese's grievance with the Contract Board, a body established by the

collective bargaining agreement to interpret the collective bargaining agreement and resolve disputes between management and labor. The Contract Board is comprised of an equal number of management and union representatives. That same day, Reese was deemed ineligible for further employment with VIT.

On January 21, 2010, Reese filed an amended complaint with the EEOC, alleging discrimination on the basis of race, gender, and disability, and alleging retaliation for the filing of his initial EEOC complaint in August 2009.

On February 16, 2010, the Contract Board met to consider Reese's grievance under the collective bargaining agreement. Reese was represented at the hearing by a union official. The Contract Board ruled unanimously that the grievance was without merit.

On February 24, 2010, Morring wrote a letter to Reese, referencing copies of correspondence from the Virginia Employment Commission and ILA Local 1248 that Reese had dropped off at her office.[3] In her February 24 letter, Morring expressly disclaimed representation of Reese with respect to matters other than his workers compensation claims, stating: "I just wanted to make sure

---

[3] Morring does not recall the substantive content of the underlying correspondence, and her file did not contain copies of the correspondence. In her affidavit, she advised that she could not recall whether the correspondence was returned to Reese or inadvertently destroyed or misplaced. In the context of the events outlined above, the lost correspondence appears to have been related to Reese's EEOC complaint and his Contract Board grievance proceedings.

that you understand that I do not represent you on either of those matters but will continue to represent you in your claims for workers' compensation benefits." ECF No. 34 attach. 2, at 9.

On November 15, 2010, Morring represented Reese at his workers compensation hearing, and Reese presented testimony on his own behalf.

On February 3, 2011, the EEOC provided Reese with a Notice of Right to Sue.  On April 15, 2011, Reese filed the original complaint in this action, with Scriven entering his appearance as counsel of record for the plaintiff.

On May 24, 2011, VIT filed a motion to dismiss and for summary judgment, together with a supporting memorandum, affidavit, and exhibits.  ECF Nos. 5-7.  In its supporting memorandum, VIT suggested that the plaintiff had failed to join ILA Local 1248 as a necessary party to the litigation.  VIT's Mem. in Supp. 9 n.2, ECF No. 6.

On May 26, 2011, Reese's physician revised his work restrictions to permit Reese to work as a straddle carrier operator or hustler driver.  Shortly thereafter, Reese conveyed the revised work restrictions to ILA Local 1248, requesting that his employment with VIT be reinstated.  On June 30, 2011, Thomas M. Little, President of ILA Local 1248, conveyed a copy of the revised work restrictions to VIT, together with a letter requesting that Reese's employment be reinstated.

Meanwhile, on June 9, 2011, an administrative law judge of the U.S. Department of Labor entered a decision and order granting Reese temporary total disability benefits for the period April 26, 2009, through June 23, 2009, and continuing temporary partial disability benefits for the period beginning June 26, 2009.  On June 21, 2011, VIT filed a motion for reconsideration in the workers compensation case.  On June 22, 2011, Morring filed a response on Reese's behalf to VIT's motion for reconsideration.  On June 24, 2011, Morring filed a request on Reese's behalf for an errata order, noting a miscalculation of the dates for which Reese was eligible to receive benefits, and VIT filed its response to that request on July 8, 2011.

On July 21, 2011, this Court held a hearing on VIT's motion to dismiss and for summary judgment.  At the hearing, plaintiff's counsel requested leave to file an amended complaint adding ILA Local 1248 as a defendant.  The Court directed the plaintiff to file a written motion for leave to amend the complaint within ten days.

On July 26, 2011, the administrative law judge in Reese's workers compensation case denied VIT's motion for reconsideration and entered an errata order correcting the dates and total amount of disability benefits awarded to Reese.  Reese was awarded temporary partial disability benefits for the period April 26, 2008, through December 31, 2008, temporary total disability

benefits for the period January 1, 2009, through June 23, 2009, and continuing temporary partial disability benefits for the period beginning June 26, 2009.

On August 1, 2011, Reese filed a motion to amend the complaint in this case. The proposed amended complaint added ILA Local 1248 as a defendant and alleged breach of the union's duty of fair representation.

Based on billing records, Montagna reports that he first learned of Reese's claim against ILA Local 1248 on August 11, 2011. His billing records indicate that he called Scriven that day to discuss Reese's claim against the union.

Two weeks later, on August 25, 2011, Montagna billed time for reviewing "Mr. Reese's matter." That same day, Reese's workers compensation decision became final in the absence of an appeal by either VIT or Reese. The next day, August 26, 2011, Montagna wrote a letter to Little, ILA Local 1248's president, advising him of Reese's claim against the union. Montagna acknowledges having participated in "a number of discussions by telephone" with Scriven between August and December of 2011. At some point along the way, Scriven raised the issue of Montagna's potential conflict of interest, suggesting that Reese might agree to waive the conflict if ILA Local 1248 and VIT were to enter into a global settlement with Reese. During this same five-month period, Montagna acknowledges that he may have discussed Reese's claim with union

officials on other occasions, in connection with other matters, without billing his time to the Reese matter. He also spent time reviewing documents and meeting with Little to discuss Reese's amended complaint in detail.

On October 19, 2011, the Court granted Reese's motion to amend the complaint and directed him to file a signed copy of the amended complaint. The undersigned further recommended to the presiding district judge that VIT's motion to dismiss and for summary judgment be granted with respect to Reese's intentional infliction of emotional distress claim, but otherwise denied. The Court subsequently adopted that recommendation in its Order of December 1, 2011. Reese formally filed his amended complaint a few days later on December 5, 2011.

Meanwhile, on October 27, 2011, two months after the workers compensation decision became final, Morring wrote to Reese to advise him that "there is nothing further for me to do regarding the above referenced matter. Accordingly, I will be closing my files." ECF No. 34 attach. 2, at 4. ILA Local 1248 has characterized this letter as having terminated the attorney-client relationship between Reese and the Montagna Klein firm. Morring wrote a subsequent letter to Reese on December 12, 2011, declining further representation of Reese in connection with a possible modification of his workers compensation award based on a change in his condition. See generally 33 U.S.C. § 922.

At the same time in early December, Montagna and Scriven exchanged a series of letters.  On December 9, 2011, Montagna appears to have written Scriven to confirm that Montagna would be defending ILA Local 1248 against Reese's claim, and to advise Scriven that he would not accept service of the amended complaint on the union's behalf.  On December 12, 2011, Scriven responded with a letter to Montagna, discussing the Montagna Klein firm's conflict of interest and suggesting that Reese would be willing to waive the conflict for the limited purpose of settlement discussions.  On December 13, 2011, Montagna appears to have responded to Scriven by letter, declining to withdraw from representing the union and declining the invitation to participate in settlement talks.  On December 14, 2011, Scriven wrote to Montagna, advising him that the plaintiff would be moving to disqualify the Montagna Klein firm once they entered their appearance in the case as counsel of record for the union.

On December 29, 2011, the amended complaint was served on ILA Local 1248.[4]  On January 19, 2011, the union filed its answer to the amended complaint, with Lance A. Jackson of the Montagna Klein firm entering his appearance as counsel of record for ILA Local 1248.  One month later, the plaintiff filed the instant motion.

---

[4] The Court notes that the union has objected to the manner of service of the amended complaint.  That dispute, however, is not pertinent to resolution of the disqualification motion.

## II. **ANALYSIS**

The Court first considers the guidance of the Fourth Circuit:

> In determining whether to disqualify counsel for
> conflict of interest, the trial court is not to
> weigh the circumstances "with hair-splitting nicety"
> but, in the proper exercise of its supervising
> power over the members of the bar and with the view
> of preventing "the appearance of impropriety," it
> is to resolve all doubts in favor of
> disqualification.

United States v. Clarkson, 567 F.2d 270, 273 n.3 (4th Cir. 1977)

(citations omitted); see also Sanford v. Virginia, 687 F. Supp. 2d

591, 602 (E.D. Va. 2009) ("In other words, the assessment must be

made in perspective of the realities of the case.").

As this Court has previously observed:

> It is, of course, important in our system of
> justice that the parties be free to retain counsel
> of their choice. "However, this Court has held
> that the right of one to retain counsel of his
> choosing is 'secondary in importance to the Court's
> duty to maintain the highest ethical standards of
> professional conduct to insure and preserve trust
> in the integrity of the bar.'" Accordingly,
> "[t]here must be a balance between the client's
> free choice of counsel and the maintenance of the
> highest ethical and professional standards in the
> legal community." Moreover, the party seeking
> disqualification has a high standard of proof to
> show that disqualification is warranted. These
> principles are well settled.

Sanford, 687 F. Supp. 2d at 602 (citations omitted) (quoting

Tessier v. Plastic Surgery Specialists, Inc., 731 F. Supp. 724, 729

(E.D. Va. 1990) (citations omitted)).

> While, as the Fourth Circuit explained in Clarkson,
> the assessment to be made in a disqualification

motion cannot be made with "hair-splitting nicety,"
it is nonetheless true that the asserted conflict
must be a real one and not a hypothetical one or a
fanciful one.   Put another way, disqualification
simply cannot be based on mere speculation that "a
chain of events whose occurrence theoretically
could lead counsel to act counter to his client's
interests might in fact occur."   The applicable
rule requires disqualification when the independent
professional judgment of the lawyer is likely to be
affected.     Accordingly, some stronger indicator
than judicial intuition or surmise on the part of
opposing counsel is necessary to warrant the
"drastic step of disqualification of counsel."

Id. at 602-03 (citations omitted) (quoting Shaffer v. Farm Fresh,

Inc., 966 F.2d 142, 145-46 (4th Cir. 1992), and citing Aetna Cas. &

Surety Co. v. United States, 570 F.2d 1197, 1200-01 (4th Cir.

1978), and Richmond Hilton Assocs. v. City of Richmond, 690 F.2d

1086, 1089-90 (4th Cir. 1982)).

The Court notes that "the lawyer's duty of loyalty long has

precluded the representation of conflicting interests." Chauffers,

Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 586

(1990); see also Dyntel Corp. v. Ebner, 120 F.3d 488, 492 ("[U]nder

Virginia law it is clear that a lawyer owes his or her client a

fiduciary duty."); Tessier, 731 F. Supp. 733 (recognizing that an

attorney has a duty of loyalty to his client).   This duty of

loyalty is reflected in Rules 1.7 and 1.9 of the Virginia Rules of

Professional Conduct, which govern conflicts of interest with

respect to current and former clients, respectively. See generally

Va. R. Prof'l Conduct 1.7 & cmts. [1], [6], [8]; Va. R. Prof'l

Conduct 1.9 & cmt. [3].[5]  The principles of confidentiality and the
attorney-client privilege are also concerns implicated when an
attorney undertakes to represent conflicting interests.  See
generally Va. R. Prof'l Conduct 1.6; Va. R. Prof'l Conduct 1.7 cmt.
[30].

## A. Concurrent Conflict of Interest

Rule 1.7 of the Virginia Rules of Professional Conduct
provides that:

> (a) Except as provided in paragraph (b), a lawyer
> shall not represent a client if the
> representation involves a concurrent conflict
> of interest. A concurrent conflict of
> interest exists if:
>
> (1) the representation of one client will be
> directly adverse to another client; or
>
> (2) there is a significant risk that the
> representation of one or more clients
> will be materially limited by the
> lawyer's responsibilities to another
> client, a former client or a third person
> or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent
> conflict of interest under paragraph (a), a
> lawyer may represent a client if each affected
> client consents after consultation, and:
>
> (1) the lawyer reasonably believes that the
> lawyer will be able to provide competent
> and diligent representation to each
> affected client;
>
> (2) the representation is not prohibited by
> law;

---

[5] The ethical standard for the practice of law in civil cases
in this Court is the Virginia Rules of Professional Conduct.  See
Local Civ. R. 83.1(I); see also Sanford, 687 F. Supp. 2d at 601.

> (3)  the representation does not involve the
>       assertion of a claim by one client
>       against another client represented by the
>       lawyer in the same litigation or other
>       proceeding before a tribunal; and
>
> (4)  the consent from the client is
>       memorialized in writing.

Va. R. Prof'l Conduct 1.7; see also Sanford, 687 F. Supp. 2d at

596, 601.

Rule 1.10 of the Virginia Rules of Professional Conduct

provides that:

> (a)  While lawyers are associated in a firm, none
>       of them shall knowingly represent a client
>       when any one of them practicing alone would be
>       prohibited from doing so by Rules 1.6, 1.7,
>       1.9, or 2.10(e).
>
>       . . . .
>
> (c)  A disqualification prescribed by this Rule may
>       be waived by the affected client under the
>       conditions stated in Rule 1.7.

Va. R. Prof'l Conduct 1.10.

The conflict of interest at issue in this case arises under

Rules 1.7(a)(1) and 1.10(a).  It is beyond cavil that Reese and ILA

Local 1248 are directly adverse in this federal lawsuit.  Based on

the affidavits of Montagna Klein attorneys Charles Montanga and

Charlene Morring, that law firm's representation of ILA Local 1248

in this action began no later than August 11, 2011, when Montagna

learned of Reese's claim and called Scriven to discuss it, and it

continued to represent Reese in his workers compensation case until

October 27, 2011, when Morring wrote to advise Reese that she had

closed her file.[6] See SWS Fin. Fund A v. Saloman Bros. Inc., 790
F. Supp. 1392, 1398 (N.D. Ill. 1992) ("[O]nce established, a
lawyer-client relationship does not terminate easily.  Something
inconsistent with the continuation of the relationship must
transpire in order to end the relationship."); see also id. at
1398-99 (identifying the three events that can terminate an
attorney-client relationship).  Thus, for an eleven-week period
between August and October 2011, the Montagna Klein firm
represented ILA Local 1248 directly against the plaintiff, also a
current client of the firm at that time.

Moreover, although the plaintiff's workers compensation case
had largely run its course by the time Montagna Klein commenced its
representation of ILA Local 1248 in this matter, the law firm's
representation of Reese at that point was neither dormant nor
purely ministerial.  See JTH Tax, Inc. v. H & R Block E. Tax
Servs., Inc., 28 Fed. App'x 207, 218 (4th Cir. 2002) (party moving
for disqualification was not an "existing client" of opposing
counsel under Rule 1.7 where counsel represented it in an unrelated
matter "sufficiently dormant to make [counsel]'s duties to [movant]
purely 'ministerial'").  Morring had been actively filing motion
papers in the workers compensation case just weeks before Montagna

_____

[6] The plaintiff has argued that the Montagna Klein firm
continued to represent him for some period of time after that date,
but the particular date or event upon which the attorney-client
relationship between Reese and the Montagna Klein firm terminated
is not material to the disposition of this motion.

began representing ILA Local 1248 in this case, and the administrative law judge's decision was not final until two weeks later.  In the interim, Reese could be expected to rely on Morring's judgment and legal advice on whether an appeal of the administrative law judge's decision was merited.  Reese could also have reasonably expected Morring to continue to represent him on appeal if VIT had opted to file an appeal before the August 25 deadline.  Indeed, until her October 27, 2011, letter, Reese also could have reasonably relied on Morring to provide him with legal advice on whether seeking a change-in-condition modification to his workers compensation award might be merited.

Finally, even the most perfunctory conflict check would have revealed this particular conflict of interest.  See generally In re Butterfield, VSB Dkt. No. 05-000-1513, 2004 WL 5681495, at *1–*2, *3, *15 (Va. State Bar Disciplinary Bd. Nov. 19, 2004) (Rules 1.7 and 1.10 require law firms to implement reasonable conflict clearance procedures).  Montagna had personally represented Reese in past workers compensation proceedings, and Reese's allegations suggest that Montagna knew of Morring's current representation of Reese.  But even assuming that Montagna did not personally know the current status of the firm's relationship with Reese on August 11, 2011, a preliminary database search or even a simple, informal query to his five law partners should have readily revealed that Reese was a current client of the firm.

Reese has declined to give his consent to the Montagna Klein firm's representation of ILA Local 1248 in this matter.  Absent informed consent by both clients, such conflicted representation is prohibited under the Virginia Rules of Professional Conduct.  In undertaking to defend ILA Local 1248 against Reese's claim, while at the same time representing Reese in related workers compensation proceedings, the attorneys of the Montagna Klein firm have violated Rules 1.7 and 1.10 of the Virginia Rules of Professional Conduct and breached the corresponding duty of loyalty they owed to Reese.[7]

## B. Disqualification

Having determined that the Montagna Klein firm's representation of ILA Local 1248 in this matter violated Rules 1.7 and 1.10 of the Virginia Rules of Professional Conduct, the Court must next determine whether the law firm's disqualification from

---

[7] As alternate grounds for disqualification, the plaintiff contends that the Montagna Klein firm also violated Rule 1.9, governing former client conflicts, and Rule 1.18, governing prospective client conflicts.  Having determined that the Montagna Klein firm had a concurrent conflict of interest pursuant to Rule 1.7, it is not necessary to examine these alternate grounds in detail.  But the Court notes that, for the reasons addressed below, Reese's workers compensation claim is not the same or substantially related to his hybrid Section 301 claim against ILA Local 1248. See Va. R. Prof'l Conduct 1.9(a); Tessier, 731 F. Supp. at 730. Moreover, Reese's various affidavits regarding alleged face-to-face conversations with Charles Montagna are internally inconsistent and not entirely credible; but even if fully credited, they fail to establish that Montagna received information from Reese that could be significantly harmful to Reese in this case.  See Va. R. Prof'l Conduct 1.18(c).  Thus the Montagna Klein firm's representation of ILA Local 1248 in this action does not involve a prohibited conflict of interest under either Rule 1.9 or Rule 1.18.

further representation of ILA Local 1248 in this matter is the appropriate sanction. See <u>JTH Tax</u>, 28 Fed. App'x at 218; <u>Lifenet, Inc. v. Musculoskeletal Transplant Found.</u>, No. 3:06cv387, 2007 WL 1169191, at *2 (E.D. Va. Apr. 19, 2007); see also <u>SWS Fin. Fund A</u>, 790 F. Supp. at 1399-400 ("Although disqualification is ordinarily the result of a finding that a disciplinary rule prohibits an attorney's appearance in a case, disqualification is never automatic.") (quoting <u>United States v. Miller</u>, 624 F.2d 1198, 1201 (3d Cir. 1980)); <u>Wyeth v. Abbott Labs.</u>, 692 F. Supp. 2d 453, 457 (D.N.J. 2010); <u>Cliff Sales Co. v. Am. S.S. Co.</u>, No. 1:07-CV-485, 2007 WL 2907323, at *5 (N.D. Ohio Oct. 4, 2007); <u>Argue v. David Davis Enters., Inc.</u>, No. Civ. A. 02-9521, 2004 WL 2480836, at *1 (E.D. Pa. Nov. 4, 2004). "[T]he court should disqualify an attorney only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule." <u>Wyeth</u>, 692 F. Supp. 2d at 457 (quoting <u>Miller</u>, 624 F.2d at 1201). As previously noted, "the party seeking disqualification has a high standard of proof to show that disqualification is warranted." <u>Sanford</u>, 687 F. Supp. 2d at 602.

"Disqualification is one of three sanctions available to enforce the prophylactic conflicts rules. Disciplinary proceedings and civil remedies (<u>i.e.</u>, malpractice suits and defenses for the non-payment of legal fees) can also be effective sanctions." <u>SWS</u>

Fin. Fund A, 790 F. Supp. at 1400 (citations omitted).   For

example, where the movant has suffered no prejudice as a result of

counsel's conflicted representation, the Fourth Circuit has held

that an appropriate remedy may be referral of counsel to the

Virginia State Bar for violation of the Virginia Rules of

Professional Conduct, rather than disqualification.   JTH Tax, 28

Fed. App'x at 218.

> Disqualification . . . is a blunt device.   The
> sanction of disqualification foists substantial
> costs upon innocent third parties.   The innocent
> client . . . may suffer delay, inconvenience and
> expense and will be deprived of its choice of
> counsel.   When disqualification is granted,
> sometimes the new attorney may find it difficult to
> master fully the subtle legal and factual nuances
> of a complex case . . . , actually impairing the
> adversarial process.   Of course, the court may also
> lose the time and labor invested in educating
> itself in the proceedings prior to
> disqualification.

SWS Fin. Fund A, 790 F. Supp. at 1400-01.

> [W]ith rare exceptions disqualification has been
> ordered only in essentially two kinds of cases: (1)
> where an attorney's conflict of interests . . .
> undermines the court's confidence in the vigor of
> the attorney's representation of his client, or
> more commonly (2) where the attorney is at least
> potentially in a position to use privileged
> information concerning the other side through prior
> representation, thus giving his present client an
> unfair advantage.

Bd. of Educ. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979)

(citations and footnotes omitted).

   In this case, there is nothing to suggest that the Montagna

Klein firm's overlap in representations compromised its ability to represent either client with vigor. The eleven-week overlap was relatively brief and came at a time when both cases were focused on procedural rather than substantive activity. The law firm's representation of ILA Local 1248 in this action began only after a final order had been entered in Reese's workers compensation case (albeit two weeks before that order actually became final upon VIT's decision not to appeal), and its representation of Reese ended months before the union was served with and answered the amended complaint in this case. Reese alleges nothing that would suggest that the law firm's representation of the union in this action undermined its representation of Reese: all substantive activity in the workers compensation case appears to have been completed before the law firm took up its defense of ILA Local 1248 in this case.[8] There was no overlap in personnel between the two cases. Reese's expectations of loyalty were not so "cavalierly trampled" that disqualification of the Montagna Klein firm is warranted as a sanction. See SWS Fin. Fund A, 790 F. Supp. at 1402.

There is also nothing to suggest that ILA Local 1248 has gained an unfair advantage through access to privileged information obtained through its prior representation of Reese. "It is well

_____

[8] Moreover, there is nothing to suggest that the law firm's representation of the union in this case has been anything less than vigorous.

- 21 -

settled that once an attorney-client relationship has been
established, an irrebuttable presumption arises that confidential
information was conveyed to the attorney in the prior matter."
Tessier, 731 F. Supp. at 731; see also In re Asbestos Cases, 514 F.
Supp. 914, 920 (E.D. Va. 1981) ("The law presumes that an attorney
possesses all confidential information to which he had access in
his prior representation of a client."). Thus the Court must
consider whether "the lawyer could have obtained confidential
information in the first representation that would have been
relevant in the second." See Tessier, 731 F. Supp. at 730.

The first representation involved a workers compensation claim
brought by Reese against his employer, VIT.

> In order for an injury to be compensable under the
> Virginia Workers' Compensation Act, the plaintiff's
> injury must have been (1) an injury by accident;
> (2) arising out of [his] employment; and (3)
> arising in the course of [his] employment. To
> establish an "injury by accident," a claimant must
> prove (1) that the injury appeared suddenly at a
> particular time and place and upon a particular
> occasion, (2) that it was caused by an identifiable
> incident or sudden precipitating event, and (3)
> that it resulted in an obvious mechanical or
> structural change in the human body. An injury is
> considered to be "by accident" if all these
> conditions are satisfied, even if the injury was
> the result of a willful and/or intentional tort
> committed by the injured employee's employer or a
> fellow employee. "An accident occurs 'in the
> course of the employment' when it takes place
> within the period of the employment, at a place
> where the employee may reasonably be, and while he
> is reasonably fulfilling duties of his employment
> or engaged in doing something incidental thereto."
> However, it excludes an injury which cannot fairly

> be traced to the employment as a contributing
> proximate cause and which comes from a hazard to
> which the worker would have been equally exposed
> apart from the employment.

Wain v. Trammell Hotel Invs., LLC, No. 1:05CV00043, 2005 WL

2044950, at *4 (W.D. Va. Aug. 24, 2005) (citations omitted).  The

Montagna Klein firm thus can be presumed to have received

confidential information regarding the circumstances of Reese's

2005 and 2006 workplace injuries, the resultant work restrictions

imposed by his physician, and any other potential causes for his

work restrictions (e.g., a motorcycle crash).

The second representation involves a hybrid Section 301 claim

brought by Reese against his employer, VIT, and his union, ILA

Local 1248.  "[T]o prevail on the merits against either party, an

employee must prove both 1) that the union breached its duty of

fair representation and 2) that his employer violated the

collective bargaining agreement." Thompson v. Aluminum Co. of Am.,

276 F.3d 651, 656 (4th Cir. 2002).

> In order to establish a claim for breach of a
> union's duty of fair representation, a plaintiff
> must show that his grievance has been handled
> perfunctorily, or in bad faith, and that "there is
> substantial reason to believe that a union breach
> of duty contributed to an erroneous outcome in the
> contractual proceedings." . . . A breach of the
> union's duty occurs when a union's conduct toward a
> member is "arbitrary, discriminatory or in bad
> faith." . . . Simple negligence, ineffectiveness,
> or poor judgment, however, will not establish a
> fair representation claim, rather "the union's
> conduct must be 'grossly deficient' or in reckless
> disregard of the members' rights."

Int'l Longshoremen's Assoc., S.S. Clerks Local 1624 v. Virginia Int'l Terms., Inc., 904 F. Supp. 500, 508 (E.D. Va. 1995). As noted previously, Reese's hybrid Section 301 claim arises from VIT's refusal to reinstate Reese's employment in June 2011, after work restrictions that previously prevented him from performing his job duties were lifted by his physician on May 26, 2011.

The focus of this action is on the collective bargaining agreement, VIT's reasons for refusing the reinstate Reese's employment, and the union's handling of his reinstatement-related grievance.  There is nothing to suggest that the Montagna Klein firm obtained any confidential information touching on these subjects in the course of its representation of Reese in workers compensation proceedings.  Any confidential information it did receive regarding Reese's now-defunct work restrictions and the circumstances of his 2005 and 2006 workplace injuries is simply not relevant to the disposition of his hybrid Section 301 claim against VIT and ILA Local 1248.[9]

Finally, the Court turns the potential prejudice that may be suffered by each of the parties.  The Montagna Klein firm has represented the union in various matters for more than two decades, apparently including matters concerning the very same collective

---

[9] Indeed, the Court notes that Scriven's conditional offer to waive the conflict for the purpose of global settlement discussions betrays a lack of concern that any confidential information communicated in the first representation might be used to the union's advantage against Reese in this action.

bargaining agreement at issue in this case. Its disqualification from this case would deprive the union not only of its choice of counsel, but of counsel with specifically relevant experience and expertise. Additionally, there would likely be some delay in this litigation as well as additional costs incurred by the union while new counsel familiarized itself with the case. In contrast, Reese has not identified any particular prejudice that he would suffer if the Montagna Klein firm is not disqualified.

In the absence of any articulable prejudice to Reese, the Court finds that the Montagna Klein firm's concurrent conflict of interest does not justify its disqualification from further representation of ILA Local 1248 in this case. See <u>JTH Tax</u>, 28 Fed. App'x at 218. Under the circumstances presented in this case, the appropriate sanction is referral of attorneys Charles Montagna, Charlene Morring, and Lance A. Jackson, and the law firm of Montagna Klein Camden, L.L.P. to the Virginia State Bar for violation of Rule 1.7(a)(1) and Rule 1.10(a) of the Virginia Rules of Professional Conduct.

### III. <u>CONCLUSION</u>

For the foregoing reasons, the plaintiff's motion to disqualify (ECF No. 29) is DENIED.

The Clerk is further DIRECTED to mail a copy of this Opinion and Order to: James McCauley, Legal Ethics Counsel, Virginia State Bar, 707 E. Main St., Ste. 1500, Richmond, VA 23219-2800.

IT IS SO ORDERED.

/s/
F. Bradford Stillman
United States Magistrate Judge

UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

August  2 , 2012